## Wilson v. City of Harrisburg et al.

*Carl B. Shelley* and *Le Roy Householder*, for plaintiff.
*John R. Geyer*, for defendant.

WICKERSHAM, J., Oct. 20, 1930.—The plaintiff's petition represents, after reciting the several acts of assembly covering the organization of the fire department of third class cities, that as part of the organized fire force of the City of Harrisburg there were and are at the present time employed by the city thirty-seven paid firemen, assigned to the respective fire companies of said city, and paid by the City of Harrisburg; that said paid firemen hold their positions solely under the regular and continuous employ of said city for a period of twenty-four hours daily, continuing during five days in each and every week. That said firemen are paid and employed under and bound by certain prescribed rules and regulations of the aforesaid fire department and are not volunteers in any manner whatsoever of the said department but are paid firemen and part of the uniformed fire force in the employ of the Department of Parks and Public Property of said city; that they are required to purchase at their own expense a uniform of a particular style and design selected and chosen by the said city. That said paid firemen are required to drive the fire apparatus of said city to and from all fires and conflagrations to which they may be called or summoned by fire alarm or otherwise, and to take active measures to extinguish and put out said fires and conflagrations. That under the provisions of section 1 of the Act of March 30, 1915, P. L. 34, as amended, it is the public duty of Herman A. Earley, Superintendent of the Department of Parks and Public Property in said city, and in charge of the fire department, to divide the said firemen of said fire department and members of the uniformed fire force of said city into two bodies or platoons; one to perform day service and one to perform night service, which said duty the said Herman A. Earley has refused to perform, by reason of which they are compelled to perform double duty, contrary to the provisions of said act. The petitioner prays for a writ of mandamus.

Upon the presentation of said petition the court ordered that a writ of mandamus in the alternative form be issued to the said defendants.

To the said writ of alternative mandamus the defendants, the City of Harrisburg and its officers, filed a return denying specifically "that as a part of the organized fire force of the city there are at the present time employed by the city thirty-seven paid firemen." The defendants admit that there are

employed thirty-seven persons as drivers of the city fire apparatus, but deny that the paid firemen are assigned to the respective fire companies, "but admit the paid drivers of the city's fire apparatus are assigned to the several companies." The defendants further deny that these paid fire drivers are not volunteers in any manner whatsoever of the fire department of the City of Harrisburg, but, on the contrary, aver that they are practically all of them volunteer members of the several fire companies of the city. The defendants deny that they are paid firemen, but, on the contrary, aver they are paid drivers of the city's fire apparatus; the defendants further deny that they are part of the uniformed fire force in the employ of the Department of Parks and Public Property of the city.

For further answer to the matters heretofore alleged, it is set forth that the City of Harrisburg does not have a uniformed paid fire department in operation, but fire protection of the city is furnished by volunteer fire associations organized in various sections of the city, aided, advised and reporting to the superintendent of the department. That subsequent to 1914 motor-driven apparatus came into extensive use and "the question of the character and efficiency of the men who should drive this apparatus of the city was believed to be better handled if submitted to central control than if left to the employment by the several companies, and thereupon the plan was devised that they, who should drive this apparatus of the city, should be specially selected and report directly to the head of the department and be paid directly by the City of Harrisburg instead of by the several companies." That an ordinance was passed "fixing the number and compensation of the drivers of the city's fire apparatus, and directing the manner of their payment, and . . . that they should be subject to the orders of the superintendent of that department."

The plaintiff demurred to the said return filed by the defendant. The demurrer admits the truth of the return: Com. *v.* Dickinson, 83 Pa. 458.

Applying this well-established principle to the allegations in the return, it appears very clearly that the City of Harrisburg does not have a paid fire department, but depends for protection of the property of its residents on the voluntary efforts of the several fire companies of the city. It is admitted, however, that the petitioner and his associates, thirty-seven in number, are paid by the city and are under the direction of the superintendent; that they wear a uniform and that they are in constant attendance at the fire houses of the several volunteer fire companies twenty-four hours of the day and five days in each week, but that they are relieved three hours out of each twenty-four hours. It is further admitted that these drivers are practically all of them volunteer members of the several fire companies of the city, although not of necessity members of the particular company to which they are assigned. The demurrer further admits that the regulation fixing the number and compensation of the drivers of the city fire apparatus was provided and ordained by Ordinance No. 47, attached to and made a part of the return; and that the fire department is governed by certain rules approved by the council of said city on Nov. 11, 1919, also attached to and made a part of the return.

Having under consideration the facts in the instant case established and admitted by the return and demurrer, the question for determination is whether the Act of March 30, 1915, P. L. 34, as amended, by extending the same to cities of the third class, by the Act approved July 8, 1919, P. L. 734, applies to the City of Harrisburg.

The said amending Act of 1919 provides as follows:

"That the head of the department of public safety in each city of the first, second and third class shall, from and after the first day of January, one thousand nine hundred twenty, divide the officers and members of companies of the uniformed fire force in the employ of such cities, excepting the chief engineer and assistant chiefs, into two bodies or platoons—one to perform day service and the other to perform night service. The hours of day service shall not exceed ten, commencing at eight o'clock in the morning; the hours of night service shall not exceed fourteen, commencing at six o'clock in the afternoon. In cases of riot, serious conflagration, or other such emergency, the chief engineer of the bureau of fire, or the assistant chief deputy, or chief officer in charge at any fire, shall have the power to assign all the members of the fire force to continuous duty, or to continue any member thereof on duty, if necessary. No member of either of said platoons shall be required to perform continuous day service or continuous night service for a longer consecutive period than two weeks; nor be kept on duty continuously longer than ten hours in the day platoon, or fourteen hours in the night platoon, excepting as may be necessary to equalize the hours of duty and service, and also excepting in cases of riot, serious conflagration, or other such emergency, as above provided. . . ."

The City of Harrisburg operates under a commission form of government, and created five executive and administrative departments for its government, being the Department of Public Affairs, Department of Accounts and Finance, Department of Public Safety, Department of Streets and Public Improvements, and Department of Parks and Public Property. Herman A. Earley has been duly designated by the Council of the City of Harrisburg as Superintendent of the Department of Parks and Public Property of said city; and by ordinance of said city, they assigned and delegated to the Department of Parks and Public Property the duties relating to the organization, conduct, regulation and government of the fire department of said city. The duties prescribed to be performed and done under the Act of July 8, 1919, by the head of the Department of Public Safety under the said ordinance have been assigned to the Department of Parks and Public Property, of which the said Herman A. Earley is the head.

If we substitute the head of the Department of Parks and Public Property for the head of the Department of Public Safety, as provided in the Act of 1919, then the act would read that the head of the *Department of Parks and Public Property* in "each city of the . . . third class shall . . . divide the officers and members of companies of the uniformed fire force in the employ of such cities . . . into two bodies or platoons." Does the mandate of said act, that the head of the department "shall divide," apply to the City of Harrisburg, which admittedly has no paid fire department?

It is admitted the paid drivers are practically all members of some one of the volunteer fire companies of the city, and that they have been designated by ordinance as the drivers of the fire apparatus. Does that make them a part of a paid fire department? The act does not provide that the paid drivers of the several fire companies shall be divided into two platoons; the language of the act is that the "head of the department shall . . . divide the *officers* and *members* of the *companies* of the uniformed fire force in the employ of such cities . . . into two bodies or platoons." We think this applies only to cities having a paid fire department. We cannot avoid this conclusion and decide otherwise because the clear intent of the act was that the *"officers* and *members"* shall be divided into platoons, which, we think, includes the entire fire department and not merely those only of each company who are paid to

drive the fire apparatus while all the other members of a volunteer company render their services gratuitously.

"Platoon" is defined in Webster's New International Dictionary to be a group of men. The record discloses that in some of the fire companies there is only one paid driver. How could the superintendent divide one man into a platoon? To state this question is to answer it.

It appears that the complainant in this case and his associates are required to serve twenty-one out of twenty-four hours every day for five days in the week. This may be a somewhat exacting service, but the court is powerless to relieve them without some plain statutory authority; that relief cannot be accorded without further legislation.

The demurrer is overruled, and for reasons herein stated we dismiss the plaintiff's petition. Costs to be paid by the plaintiff.